UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

─────────────────────

N° 17-CV-7027 (JFB)

─────────────────────

TERRENCE TERRELL,

Petitioner,

VERSUS

SUSAN KICKBUSH,

Respondent.

─────────────────────

**MEMORANDUM AND ORDER**
August 16, 2019

─────────────────────

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

On November 28, 2017, Terrence Terrell (hereinafter "petitioner") petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in New York state court on four grounds. On February 1, 2007, petitioner was convicted after a jury trial in the County Court of Suffolk County of one count of Criminal Sexual Act in the First Degree, in violation of New York Penal Law § 130.50, a Class "B" felony, and two counts of Robbery in the First Degree, in violation of New York Penal Law § 160.15, a Class "B" felony.

Petitioner was thereafter sentenced to consecutive terms totaling thirty-eight years' imprisonment with five years' post-release supervision. On direct appeal, the New York Supreme Court, Appellate Division, affirmed petitioner's convictions, but reduced his sentence to concurrent sentences totaling twenty years' imprisonment.

In the instant habeas action, petitioner challenges his conviction as unconstitutional on the grounds that: (1) petitioner was denied his right to a fair trial when the court failed to conduct an inquiry in response to information that more than half of the jurors were deliberating prematurely, in violation of *People v. Buford*, 69 N.Y.2d 290 (1987); (2) petitioner was denied effective assistance of counsel when defense counsel failed to request that the court individually question jurors about premature deliberations; (3) the trial court erred in applying petitioner's *Antommarchi* waiver to exclude him from an *in camera* inquiry of an alternate juror; and (4) the prosecution's reasons for exercising its peremptory challenges to excuse

prospective African American jurors were a pretext for discrimination on the basis of race and, thus, constituted a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

For the reasons set forth below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND

The following facts are adduced from the instant petition and the underlying record.

A. Factual Background

1. Underlying Crime

On or about December 3, 2005, in Bayshore, New York, petitioner and two co-defendants, Douglas Payton ("Payton") and Reginald Dugue ("Dugue"), pulled up to a parked car, where victims K. and S. were sitting, made a three-point turn, and appeared to leave. (T. 382.)[1] Approximately ten minutes later, two masked males, Payton and Dugue, banged on the driver side window and told K. and S. to exit the car. (T. 288, 833.) Petitioner, also wearing a mask, was on the passenger side of the vehicle and demanded cash from S. (T. 288, 382-83.) S. gave petitioner her pocketbook and got out of the car. (T. 383.) Dugue, who was holding a gun, ripped S.'s clothes off and led S. to the backseat of the Payton's Toyota. (T. 385-86, 837.) When S. got into the back seat of the car, petitioner forced S. to conduct a sexual act on him. (T. 386, 838.) While this was happening, Payton forced K. to remove the stereo system from his car and place it into the trunk of the Toyota. (T. 290, 515, 517.)

After leaving, petitioner, Dugue, and Payton went to Dugue's house where money was exchanged, and Dugue stated, "snitches get stitches." (T. 843.)

On or about February 2, 2006, petitioner was arrested. (T. 649.) After waiving his *Miranda* rights, petitioner told the police that he believed the crime was Payton's idea, admitted that the female victim performed a sexual act on him, and admitted that the male victim's stereo was in Payton's car. (T. 598-99.)

2. Jury Selection

On January 22, 2007, at the start of jury selection, the judge explained petitioner's constitutional and statutory right to be present during any material stage of the trial, and petitioner signed a written *Antommarchi* waiver thereby waiving his right to be present at any sidebar discussions or conferences conducted in chambers "that relate to the selection of the jury, rulings by the Court concerning the admissibility of evidence and any pre-charge conferences." (J. 13-15.)

During jury selection, the prosecutor exercised peremptory challenges on three female African American potential jurors, and petitioner raised *Batson* objections. (J. 163-64, 312-15.)[2]

First, the prosecutor challenged E. Carter ("Carter") (J. 162, 168), a homemaker who had never worked outside of the home (J. 100). Defense counsel asserted that there was a *Batson* violation because Carter had "really said nothing that would indicate that she had

---

[1] References to the petitioner's state court trial transcript will be cited as "T. [page number]." The trial transcript is not electronically available on the docket for this case, but respondent filed copies with the Court.

[2] References to the jury selection transcript will be cited as "J. [page number]." This transcript is available on the docket for this case. (ECF Nos. 6-4, 6-5, & 6-6.)

Defense counsel noted that two of these jurors were, or appeared to be, African American (J. 163, 312-13), and the third was "a dark-skinned individual," although counsel had not asked what her background was (J. 164).

any kind of problem with partiality" (J. 165), and there was "nothing objectionable about her under Judiciary Law," and thus, defense counsel concluded that the prosecution challenged Carter solely because she "appear[ed] to be an African American" (J. 166). The prosecutor argued that she challenged Carter because she had never been employed and indicated that her activities were "personal hobbies . . . that she would do by herself . . . [and] she said that she was not comfortable working in a group setting." (J. 168.)

Second, the prosecutor challenged O. McGee ("McGee") (J. 162), a drug and alcohol abuse counselor (J. 169). Defense counsel argued that the prosecution challenged McGee because "she is a dark-skinned lady." (J. 167.) The prosecutor argued that she challenged McGee because she worked at a rehabilitation center for drug and alcohol abuse. (J. 169.) The prosecutor pointed out that she had also challenged another individual, who was not African American, for the "same reasons"—because that juror was employed as a guidance counselor. (*Id.*)

Third, the prosecutor challenged H. Palmore ("Palmore") (J. 312), a retired teacher and school administrator who worked in a school district for thirty-seven years (J. 254-55). Defense counsel argued that she "seem[ed] like a good candidate" for the jury "except for the fact that she [wa]s African [American]" (J. 314-15), and there was a "definite pattern" of the prosecution using its peremptory challenges to excuse every female of color (J. 313). The prosecutor argued that she challenged Palmore because she was a teacher, and teachers "tend to be overly confident in their ability to lead a group and to also judge someone's credibility." (J. 316.) The prosecutor argued that teachers are similar to counselors in that way, in support of the decision to also strike a guidance counselor and a drug counselor. (*Id.*)

The trial court found that the prosecutor's reasons for these three peremptory challenges were not pretextual, and that defense counsel did not meet the burden of proof in arguing that there had been *Batson* violations. (J. 170, 317.)

3. Premature Jury Deliberations During Trial

During trial, an alternate juror, K. Scott ("Scott"), told a court officer that some jurors had already been discussing the case. (T. 919, 921.) In an *in camera* interview on January 31, 2007, Scott stated that approximately half the jurors were prematurely discussing the case. (T. 922.) According to Scott, jurors had discussed that the defense "must be afraid that their case is a little weak," given that they put petitioner on the stand. (T. 923.) Scott told the court that it appeared that one juror in particular seemed to have made up his mind, and was "suggesting to the people that they should kind of follow." (T. 925.) However, Scott also stated that none of the jurors had made any statements regarding whether they believed petitioner was guilty or not guilty. (T. 933.)

After the *in camera* interview, defense counsel stated that he did not believe the premature deliberations rose to the level of gross misconduct to require a mistrial. (T. 934.) Although defense counsel recognized that the comment about the defense seeming desperate was "pretty detrimental," he declined the opportunity to discuss the comments with each juror individually so as not to "draw[] too much attention" to the comments. (T. 938.) Defense counsel asked the court to remind the jurors that "they can't deliberate until they have gotten the charge and they have to keep their opinions to themselves until they're in the room actually

3

deliberating," which the court did when the trial resumed. (T. 934, 957-58.)

B. Procedural History

On February 1, 2007, the jury found petitioner guilty of one count of Criminal Sexual Act in the First Degree and two counts of Robbery in the First Degree. (T. 1192-96.) Petitioner was sentenced on March 2, 2007 to consecutive terms totaling thirty-eight years of imprisonment with five years of post-release supervision. (S. 32.)[3]

Petitioner appealed his conviction to the Appellate Division, Second Department. On appeal, the defendant raised five issues: (1) petitioner was denied his right to a fair trial when the court failed to conduct an inquiry in response to information that more than half of the jurors were deliberating prematurely in violation of *Buford*; (2) petitioner was denied effective assistance of counsel when defense counsel failed to request that the court individually question jurors about premature deliberations; (3) the trial court erred in applying petitioner's *Antommarchi* waiver to exclude him from an *in camera* inquiry of an alternate juror; (4) the prosecution's reasons for exercising its peremptory challenges to excuse prospective African American jurors were a pretext for discriminating on the basis of race, in violation of *Batson*; and (5) the sentence the trial court imposed was excessive. *People v. Terrell*, 149 A.D.3d 1108, 1108-09 (N.Y. App. Div. 2017).

On April 26, 2017, the Appellate Division modified the judgment by holding that the sentences run concurrently with each other, rather than consecutively, and as modified, affirmed the judgment. *Terrell*, 149 A.D.3d at 1108.

Petitioner sought leave to appeal the Appellate Division's decision to the New York State Court of Appeals pursuant to Criminal Procedure Law § 460.20. (ECF No. 6-3 at 6.) The application for leave to appeal was denied on June 27, 2017. *People v. Terrell*, 29 N.Y.3d 1087 (2017).

On November 28, 2017, petitioner filed his *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[4] (Pet. 12.)[5] Respondent submitted an Answer and a Memorandum of Law on January 9, 2018. The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[3] References to the petitioner's sentencing transcript will be cited as "S. [page number]." The sentencing transcript is not electronically available on the docket for this case, but respondent filed copies with the Court.

[4] Petitioner raised four claims in this petition. He dropped the fifth claim raised in his state court appeal—that the sentence was excessive—after the Appellate Division's modification.

[5] References to the Petition for a Writ of Habeas Corpus petitioner filed in this Court (ECF No. 1) will be cited as "Pet. [page number]."

4

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2554. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

A. Procedural Bar

1. Legal Standard

A petitioner's federal claims may be procedurally barred from habeas review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991); *see, e.g.*, *Michigan v. Long*, 463 U.S. 1032, 1041 (1983). A procedural rule is adequate if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (citation omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261-63, 265 n.12 (1989) (citations omitted) ("[A] state court that wishes to rely on a procedural bar rule in a one-line *pro forma* order easily can write that 'relief is denied for reasons of procedural default.'" (citation omitted)); *see, e.g.*, *Allan v. Conway*, No. 08–CV–4894 (JFB), 2012 WL 70839, at *9 (E.D.N.Y. Jan. 10, 2012) ("The appellate court's statement that petitioner's claim was 'unpreserved' is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue."); *Figueroa v. Grenier*, No. 02 Civ.5444 DAB GWG, 2005

WL 249001, at *8 (S.D.N.Y. Feb. 3, 2005) (citing *Harris*, 489 U.S. at 265 n.12). In addition, a state court's reliance on an independent and adequate procedural bar precludes habeas review even if the state court also rejected the claim on the merits in the alternative. *See, e.g.*, *Harris*, 489 U.S. at 264 n.10 (explaining that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding," so long as the state court "explicitly invokes a state procedural bar rule as a separate basis for decision"); *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996).

A federal habeas court may not review a procedurally barred claim on the merits unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778 BMC, 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Such prejudice can be demonstrated by showing that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (citation omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome a procedural default based on a miscarriage of justice, the petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518-19, 536 (2006).

2. Application

Here, three of petitioner's claims were decided on independent and adequate state procedural grounds and are, therefore, barred from federal habeas review.

With respect to petitioner's first claim—that he was denied his Sixth Amendment right to a fair trial—the Appellate Division stated that a request for an inquiry regarding premature deliberations was "never made at trial," and therefore "this contention is unpreserved for appellate review." *Terrell*, 149 A.D.3d at 1109. In light of the Appellate Division's reliance on this independent and adequate state law procedural basis for denying this claim on appeal, this claim is procedurally barred from federal habeas review. *See, e.g.*, *Allan v. Conway*, No. 08–CV–4894 (JFB), 2012 WL 70839, at *9-10 (collecting cases).

With respect to petitioner's third claim—that the trial court erred in applying petitioner's *Antommarchi* waiver to exclude him from an *in camera* inquiry of an alternate juror—the Appellate Division decided the claim on the independent and adequate procedural ground that, under New York law, although defendants have a statutory right to be present at all material stages of trial, this right is qualified when the proceedings involved are ancillary. *Terrell*, 149 A.D.3d at 1108-09 (first citing N.Y. C.P.L. § 260.20 (McKinney 1970) and then citing *People v. Velasquez*, 1 N.Y.3d 44, 47 (2003)). The Appellate Division explained that a conference to determine whether a sworn juror should be excluded is considered an ancillary proceeding in New York, and thus a

6

defendant does not have a statutory right to be present. *Id.* (first citing N.Y. C.P.L. § 270.35 (McKinney 1999) and then citing *People v. Harris*, 99 N.Y.2d 202, 212 (2002)). Given that the Appellate Division's decision rested on this procedural rule, this claim is procedurally barred from habeas review. *See, e.g.*, *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

Finally, with respect to petitioner's fourth claim—that his rights were violated because the prosecution's reasons for exercising its peremptory challenges to excuse prospective African American jurors were pretextual, in violation of *Batson*—the Appellate Division stated that "the defendant did not object to the prosecution's race-neutral explanation and, therefore, that claim is not preserved for appellate review. In any event . . . the record demonstrates that the prosecution's race-neutral explanations as to all three *Batson* challenges were not pretextual." *Terrell*, 149 A.D.3d at 1108 (citations omitted). As with petitioner's first claim, the Appellate Division based its decision on the independent and adequate procedural rule that this claim was unpreserved. Thus, this claim is also barred.

For each of the three claims, the fact that the Appellate Division not only relied upon a state procedural rule, but also ruled in the alternative on the merits, does not allow petitioner to avoid application of the procedural bar under *Coleman*. *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits." (citation omitted)).

In addition, petitioner has not demonstrated cause for, or actual prejudice resulting from, his defaults. First, petitioner has offered no explanation as to why he failed to contemporaneously object to these perceived errors at trial, and thus has not shown "cause" for the procedural default. Second, petitioner has not shown prejudice because, as discussed below, each of these claims fails on the merits and thus would not have "worked to his actual and substantial disadvantage." *See Torres*, 316 F.3d at 152; *see also Hudgins v. People of New York*, No. 07–CV–01862–(JFB), 2009 WL 1703266, at *6 (E.D.N.Y. June 18, 2009). Petitioner has also failed to show this case would result in a miscarriage of justice if the Court failed to review the claims on the merits because he has not demonstrated that "more likely than not . . . no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-38. For these reasons, the aforementioned claims are procedurally barred.

Nevertheless, in an abundance of caution, the Court has analyzed all of petitioner's claims in this case, and concludes that all of petitioner's claims (including the procedurally barred claims) fail on the merits. Given that petitioner's claims present no constitutional basis for habeas relief, for the reasons discussed below, the Court denies the habeas petition in its entirety.

B. Merits Analysis

   1. Premature Jury Deliberations

      a. Legal Standard

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI. "Premature deliberations present a number of dangers, all in some manner affecting or touching upon the criminal defendant's Sixth Amendment right to a fair and impartial jury trial." *United States v. Cox*, 324 F.3d 77, 86 (2d Cir. 2003) (quoting *United States v. Bertoli*, 40 F.3d 1384, 1393 (3d Cir. 1994)). Premature deliberation by jurors does not,

7

however, necessarily deprive a defendant of a fair trial. "The important thing is not that jurors keep silent with each other about the case but that each juror keep an open mind until the case has been submitted to the jury.... The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *Brown v. Greiner*, No. 02-CV-2043 (JBW), 2003 WL 22964395, at *13 (E.D.N.Y. Oct. 2, 2003) (quoting *United States v. Klee*, 494 F.2d 394, 396 (9th Cir. 1974)); *see also United States v. Abrams*, 137 F.3d 704, 709 (2d Cir. 1998) ("[P]rejudice is generally the touchstone of entitlement to a new trial when improper intra-jury influences are at issue." (citation omitted)); *United States v. Sabhnani*, 529 F. Supp. 2d 384, 390 (E.D.N.Y. 2008), *aff'd*, 599 F.3d 215 (2d Cir. 2010) (citing *Cox,* 324 F.3d at 86) ("[A] new trial is required only if juror misconduct and prejudice are determined to exist.").

Trial courts are entitled to deference in their responses to juror misconduct—especially to intra-jury communications—and the Second Circuit has stated that it "review[s] a trial judge's handling of juror misconduct for abuse of discretion," *Abrams*, 137 F.3d at 708; *Melenciano v. Walsh*, No. 02 Civ.9593(HB), 2005 WL 768591, at *6 (S.D.N.Y. Apr. 6, 2005) (stating that this review for abuse of discretion occurs "*only if* juror misconduct and actual prejudice are found" (quoting *Cox,* 324 F.3d at 86)). Where trial courts learn of premature deliberations, they have "broad flexibility" in investigating this form of juror misconduct. *Cox,* 324 F.3d at 86 (citations omitted) (explaining that the trial court has broad flexibility "especially when the alleged prejudice results from statements made by the jurors themselves, and not from media publicity or other outside influences" (quoting *United States v. Thai*, 29 F.3d 785, 803 (2d Cir. 1994))). The Second Circuit has recognized this investigation to be a "delicate and complex task." *Id.* In cases where courts have determined that (1) not all jurors were involved in premature deliberations, and (2) the premature deliberations that occurred were "not inherently prejudicial as to impair the defendant's right to a fair trial," *Sabhnani*, 529 F. Supp. 2d at 392 (citing *Brown*, 2003 WL 22964395, at *13), courts have found that the state courts' decisions that a hearing was not necessary were "not unreasonable," *Brown*, 2003 WL 22964395, at *13. In *Brown*, for instance, even though a juror made a statement prior to deliberations about defendant's guilt to "his fellow jurors," the district court found that this was a single isolated comment, and the fact that there was no inquiry of the entire jury did not impair defendant's right to a fair trial. *Id.* at *13-14. The court noted that "[t]here [wa]s no indication that [the juror who made this comment] failed to participate in deliberations in good faith," and that "[all] jurors vowed they would be receptive to opposing arguments," and, thus, denied habeas relief on this ground. *Id.* at *14. Rather than conduct a hearing, "[a] court may often properly deal with premature deliberations by simply giving a curative instruction to the jury." *Walker v. Keane*, No. 97-CV-1853 FB, 1999 WL 552798, at *6 (S.D.N.Y. July 27, 1999) (collecting cases).

Petitioner in this case raises a challenge based on *People v. Buford*, which discusses the New York state law standard governing this issue. The court in *People v. Buford* explained that, in determining whether or not a juror should be disqualified under New York Criminal Procedure Law § 270.352 as "*grossly unqualified* to serve in the case" due to "facts unknown at the time of the selection of the jury," a trial court "must question each allegedly unqualified juror individually in camera in the presence of the attorneys and defendant." *Buford*, 69 N.Y.2d at 299 (emphasis added). During this inquiry, "the court should evaluate the nature of what the

juror has seen, heard, or has acquired knowledge of, and assess its importance and its bearing on the case . . . [in order to] ascertain whether her state of mind will affect her deliberations." *Id.* The *Buford* Court noted, however, that such an *in camera* inquiry "may not be necessary in the unusual case involving an obviously trivial matter where the court, the attorneys, and defendant all agree that there is no possibility that the juror's impartiality could be affected and that there is no reason to question the juror." *Id.* at 299 n.4.

In *People v. Mejias*, the New York Court of Appeals clarified that "[p]remature deliberation by a juror, by itself, does not render a juror grossly unqualified" for the purposes of a *Buford* inquiry. 21 N.Y.3d 73, 79 (2013). The *Mejias* Court stated that "the fact that one or more jurors may have engaged in premature deliberations . . . was not sufficient to trigger a *Buford* inquiry." *Id.* at 80. The court held that, in response to learning of the potential premature deliberations, the trial court "did what was warranted; namely, it issued an additional instruction to the jurors reminding them that they were not to deliberate prior to being charged." *Id.* at 79.

      b. Application

Petitioner claims that he was denied his Sixth Amendment right to a fair trial "when the court failed to take appropriate action in response to information that more than half of the jurors were deliberating from the third day of trial." (Pet. 4.) Petitioner alleges that he is entitled to habeas relief because the trial court should have made a *Buford* inquiry under New York state law. However, federal habeas corpus relief is not available for state law errors that do not rise to the level of a violation of federal laws or the Constitution. 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citing 28 U.S.C. § 2241)). Here, the trial court's alleged violation of petitioner's rights by inadequately responding to information about premature jury deliberations did not rise to that level. Therefore, petitioner's claim does not provide grounds for a habeas claim.

In considering whether the court violated petitioner's federal constitutional right to a fair trial, more important than whether "jurors ke[pt] silent with each other about the case" is whether "each juror ke[pt] an open mind until the case [was] submitted to the jury." *Brown*, 2003 WL 22964395, at *13 (citation omitted). Here, although jurors purportedly commented on the strength of the defense's case—making statements such as, "[the defense] must feel—they have their backs in the corner if they're putting the guy on the stand" (T. 931-32)—there is no evidence that suggests that any of the comments prevented the jurors from keeping an open mind and coming to a fair and impartial verdict, *see Brown*, 2003 WL 22964395, at *13-14. Additionally, the court took measures to ensure that jurors had not made up their minds. For example, when questioning alternate juror Scott, the court asked, "In your presence, did any of the other jurors make statements stating that the defendant was not guilty or that the defendant was guilty?" to which Scott responded "No, not at all." (T. 933.) Further, the trial judge reminded the jurors to "keep an open mind" and not to "speak among yourselves or with anyone else upon any subject connected with this trial." (T. 957.) Ultimately, the reported juror comments did not rise to the level of concluding guilt, and the Appellate Division properly held that "the overheard comments were innocuous and . . . the comments did not indicate that any of the jurors possessed a state of mind that would prevent the juror

9

from rendering an impartial verdict." *Terrell*, 149 A.D.3d at 1109.

Accordingly, the state court decision was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence. Thus, petitioner's claim regarding premature jury deliberations does not warrant habeas relief.

2. Ineffective Assistance of Counsel

a. Legal Standard

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Wells*, 417 F.3d at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Wells*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 588 (quoting *Strickland*, 466 U.S. at 690). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors are of a magnitude such that they "undermine[] confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of

10

*Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)). Finally, the party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

b. Application

Petitioner claims that he received ineffective assistance of counsel because defense counsel failed "to request [that] the court . . . individually question each of the sworn jurors to determine whether they had committed serious misconduct by engaging in deliberations prior to instruction on the law." (Pet. 8.) The Court finds that there is no basis to conclude that the *Strickland* standard has been met, as petitioner has failed to show that the decision not to request that the court question the jurors was outside of the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

With respect to the first *Strickland* prong, petitioner has failed to show that counsel's performance was deficient. First, it was reasonable for defense counsel to assume that, had an inquiry of all of the jurors been conducted, it would have been unlikely to result in a mistrial or in the discharge of certain jurors as "grossly unqualified." Defense counsel informed the court that he did not believe the comments rose to the level of indicating that jurors had predetermined the case, or that a mistrial was necessary. (T. 935.) He made the strategic decision not to individually question the jurors to avoid highlighting the comments. (T. 935-37); *see Bertoli*, 40 F.3d at 1395 ("[T]he trial court must balance the potential benefits of further investigation against the possible harm of calling attention to a relatively minor situation about which the other jurors may have been unaware . . . ."). Further, in an abundance of caution, the defense requested that the court remind the jury that they were not to deliberate until instructed (and the court provided such an additional instruction). (T. 934, 957.) The Court concludes it was a reasonable strategic decision for defense counsel to decline the opportunity to individually question the jurors about the comments, in light of the answers provided by the alternate juror and the concern that questioning may have drawn attention to the comments, to the detriment of petitioner's case. *See United States v. Siegel*, 271 F. App'x 115, 117 (2d Cir. 2008) (discussing the possibility that "question[ing] jurors to determine more about possible misconduct . . . 'may create prejudice by exaggerating the importance and impact of what may have been an insignificant incident.'" (citation omitted)).

In assessing defense counsel's decision not to question the jurors—which, the Court notes, is entitled to a "heavy measure of deference," *Wells*, 417 F.3d at 319—the Court examined the portions of the trial transcript in which the trial court heard juror testimony regarding the comments at issue. According to the transcript, only one juror had been speculating that the defense "must be afraid" that the trial was not going well (T. 922-25), and, although other jurors commented that the defense likely felt that "they ha[d] their backs in the corner if they [we]re putting the guy on the stand" (T. 931-32), the alternate juror testified that they had not expressed beliefs as to petitioner's guilt (T. 933). The Court determines that, in the instant case, it was reasonable for defense counsel to believe that the jurors were still undecided and had an open mind.

Similarly, defense counsel told the court that a mistrial was not necessary (T. 935), and "[t]he record provides a legitimate justification for [counsel's] decision," *Wells*,

11

417 F.3d at 323—that a mistrial might not have been beneficial to petitioner, s*ee Bramble v. Griffin*, 543 F. App'x 1, 3 (2d Cir. 2013) (affirming district court's denial of a habeas petition based on the conclusion that defense counsel's "fail[ure] to move for a mistrial" was "far from an unreasonable strategic choice," given the possibility that a second eyewitness of defendant running from the crime scene with a gun could have been produced at a new trial)[6]; *see also United States v. FNU LNU*, No. 06-CR-172-LTS, 2015 WL 5178438, at *6 (S.D.N.Y. Sept. 4, 2015) ("The decision whether to move for a mistrial is a strategic one that lies within a defense counsel's discretion." (citation omitted)). During trial, Payton, one of the co-defendants, testified that he did not see petitioner in the backseat of the car with the female victim. (T. 516-17, 551.) This testimony conflicts with that of the male victim who was next to Payton at the time. (T. 290, 293, 364.) Defense counsel might have been concerned that, had there been a mistrial, Payton would not again testify in the same way as to certain details of the offense.

For all of these reasons, the Court concludes that counsel's strategic decision not to ask for an inquiry of the jurors regarding premature jury deliberations meets the objective standard of reasonableness and is entitled to deference. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

Turning to the second prong of *Strickland*, even assuming petitioner was able to show that counsel's performance was deficient, he has failed to show that he was prejudiced as a result. Here, the alleged error was failing to make an inquiry of all jurors, and petitioner has failed to show that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The alternate juror testified that no juror had indicated that he or she had made up his or her mind regarding petitioner's guilt (T. 933), and petitioner has presented no other evidence to support the assertion that the verdict would have been different but for counsel's decision. Overall, the Court finds there is not a reasonable probability that, absent counsel's alleged errors, a mistrial would have been declared and the result of the trial different. *See Poole*, 409 F.3d at 63-64.

Accordingly, the state court's determination that counsel was not ineffective in the handling of the jurors' conduct was not contrary to or an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts in the light of the evidence. Thus, petitioner is not entitled to habeas relief on this basis.

---

[6] Similarly, the court in *Vazquez v. Scully* found defense counsel's decision not to move for a mistrial to be a strategic choice:

> The court has carefully reviewed the trial proceedings and concludes that petitioner's counsel performed reasonably and effectively under prevailing professional norms. He succeeded in excluding from the trial evidence far more prejudicial than the prejudice alleged herein. He conducted a vigorous defense by cross-examination and arguments addressed against the admissibility of damaging evidence. He sought and obtained curative instructions by the trial judge. Furthermore, he had already succeeded in obtaining a non-verdict in the first trial. It seems quite clear that petitioner's counsel made a strategic choice not to move for a mistrial (which motion he had been advised would be granted) . . . .

694 F. Supp. 1094, 1098 (S.D.N.Y. 1988).

3. Right to be Present and *Antommarchi* Waiver

   a. Legal Standard

An accused enjoys a right both at common law and pursuant to the Sixth Amendment's Confrontation Clause to be present at all stages of trial. *See Illinois v. Allen*, 397 U.S. 337, 338 (1970). The defendant's right to be present at trial is also implicated by the fair trial concerns of the Fifth and Fourteenth Amendments, as they require a criminal defendant's presence "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964)); *see also United States v. Jones*, 381 F.3d 114, 121 (2d Cir. 2004), *cert. denied*, 543 U.S. 1072 (2005); *Polizzi v. United States*, 926 F.2d 1311, 1318 (2d Cir. 1991) (citations omitted). A defendant has the right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 720, 745 (1987) (quoting *Snyder*, 291 U.S. at 105-06).

However, the right to be present is not absolute and the privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow." *Id.* at 745 (quoting *Snyder*, 291 U.S. at 106-07); *accord Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002). Moreover, while a more expansive right to be present may apply under New York law, that broader right is not applicable in a federal habeas proceeding where it does not implicate the rights of the defendant under the Constitution. *See Rios v. Artuz*, No. 07-CV-330 (NGG), 2007 WL 1958899, at *9 n.4 (E.D.N.Y. June 29, 2007).

"Although a defendant in a state criminal trial has a federal constitutional right 'to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings,' the specific right recognized by *Antommarchi*—to be present at jury selection sidebars—is exclusively the creation of a specific provision of New York statutory law." *Outar v. Khahaifa*, No. 10-CV-3956 (MKB)(JO), 2012 WL 6698710, at *5 (E.D.N.Y. Sept. 25, 2012), *report and recommendation adopted*, No. 10-CV-3956 (MKB), 2012 WL 6698702 (E.D.N.Y. Dec. 26, 2012) (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)). No equivalent right exists under federal law. *Id.*; *James v. Senkowski*, No. 97 Civ. 3327(DCL), 1998 WL 217903, at *8 (S.D.N.Y. Apr. 29, 1998) ("There is not now and never has been a right guaranteed in the federal Constitution that a defendant be present at sidebar voir dire." (citation omitted)).

Additionally, "[a]lthough trial courts must vigorously safeguard a criminal defendant's right to be present, a defendant may expressly or effectively waive the right." *Cohen*, 290 F.3d at 491 (additional citations omitted) (quoting *United States v. Fontanez*, 878 F.2d 33, 36 (2d Cir. 1989)). "A waiver of this guarantee, as the waiver of any constitutional right in a criminal proceeding, must be knowing and voluntary," *Polizzi*, 929 F.2d at 1319 (first citing *Sassower v. Sheriff of Westchester County*, 834 F.2d 184, 191 (2d Cir. 1987); then citing *United States v. Tortora*, 464 F.2d 1202, 1208 (2d Cir. 1972)), and the trial court's factual findings "as to whether [petitioner] was knowingly and voluntarily absent will not be disturbed unless 'clearly erroneous,'" *id.* (first quoting *United States v. Fontanez*, 878 F.2d 33, 36 (2d Cir. 1989); then citing Fed. R. Civ. P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous.")). In addition, "the defendant or his counsel must object at the time of the violation or the defendant's right

13

to be present will be deemed waived." *Jones*, 381 F.3d at 122 (citing *Gagnon*, 470 U.S. at 529). Generally, violations of the right to be present during all critical stages of the proceeding are subject to harmless error analysis. *Yarborough v. Keane*, 101 F.3d 894, 897-98 (2d Cir. 1996).

  b. Application

Petitioner argues that the trial court erred in applying his *Antommarchi* waiver to exclude him from participating at the *in camera* inquiry of the alternate juror, Scott, who informed the court of the other jurors' discussions. (Pet. 6.) Because "federal habeas corpus relief does not lie for errors of state law," *Estelle*, 502 U.S. at 67 (citations omitted), petitioner's claim that the trial court erred in depriving him of a right created exclusively by state law is not, without more, cognizable on habeas review. *See Outar*, 2012 WL 6698710, at *5 (citing *Diaz v. Herbert*, 317 F. Supp. 2d 462, 473 (S.D.N.Y. 2004) ("[E]ven if [petitioner's] rights under *Antommarchi* were violated, it does not rise to the level of a federal constitutional violation. Therefore, any alleged violation of these rights is not cognizable on habeas review.")) Thus, petitioner is not entitled to habeas relief on the basis of this alleged violation of a state law right.

Although *Antommarchi* does not give rise to a federal claim, the Court has analyzed whether the alleged deprivation amounts to a violation of petitioner's federal constitutional rights. The Court concludes that petitioner has failed to show that his presence at the *in camera* inquiry of the alternate juror was required to ensure the fundamental fairness of his trial, as guaranteed by the Sixth Amendment. *See Gagnon*, 470 U.S. at 527 (holding that the presence of four respondents at an *in camera* discussion was not required to ensure fundamental fairness, and "was not the sort of event which every defendant had a right personally to attend under the Fifth Amendment"). During the *in camera* inquiry in the instant case, the court asked the alternate juror whether other jurors had prematurely determined guilt or innocence, and posed questions regarding assumptions based on petitioner's testimony at trial. (T. 924-933.) Courts have concluded that the presence of the defendant would have been useless or even counterproductive. *See, e.g.*, *United States v. Peterson*, 385 F.3d 127, 138 (2d Cir. 2004) (explaining that, by meeting with defense counsel and a juror outside of the presence of the defendants, the trial judge "was able to speak candidly with [the juror] and ascertain the extent of juror misconduct—the first step in a fair and just hearing. Had defendants been present, they could not have assisted. Indeed, their presence may have prevented [the juror] from speaking openly."); *see also Gagnon*, 470 U.S. at 527. Here, it is possible that, had petitioner been present at the *in camera* discussion, the alternate juror could have been dissuaded from speaking freely about the other jurors' alleged premature deliberations. *See Peterson*, 385 F.3d at 138.

Thus, petitioner has failed to demonstrate how his presence at the *in camera* inquiry of the alternate juror "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 720, 745 (1987) (citation omitted). Accordingly, the state court's decision that petitioner's right to be present at all material stages of the trial was not violated was not contrary to or an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts in light of the evidence. Therefore, petitioner is not entitled to habeas relief on this ground.

4. *Batson* Challenges

   a. Legal Standard

In *Batson,* the Supreme Court set forth a three-part test for a trial court evaluating whether peremptory challenges were exercised in a discriminatory manner: (1) "a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the *venire* was struck because of his or her race"; (2) "[i]f the party making the *Batson* challenge establishes a *prima facie* case, the trial court must require the nonmoving party to proffer a race-neutral explanation for striking the potential juror"; and (3) "if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination." *Galarza v. Keane*, 252 F.3d 630, 635-36 (2d Cir. 2001) (citing *Batson*, 476 U.S. at 96-98).

"[W]hen reviewing a *Batson* challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia,* to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record." *Id.* at 635 (2d Cir. 2001). As the Second Circuit explained in *Watson v. Ricks*,

> On direct appellate review of a *Batson* ruling, we generally afford "great deference" to a district court's determination of discriminatory intent, because that question of fact often turns on the court's evaluation of witness credibility. When a state trial court's *Batson* ruling is challenged under § 2254, our review is further limited by [AEDPA], under which we will not identify constitutional error unless the record "compel[s] the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications."

427 F. App'x 60, 61 (2d Cir. 2011) (citations omitted). "Throughout the *Batson* procedure, the burden of proving that a strike was exercised on an impermissible discriminatory ground remains with the movant." *Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006).

   b. Application

Petitioner claims the trial court erred in upholding three of the prosecutor's peremptory challenges that were all used to excuse African American women. (Pet. 7.) This Court concludes, however, that there is no basis in the record to disturb the trial court's finding that the prosecutor's race-neutral reasons were not pretextual. After defense counsel made a prima facie showing that the prosecutor had exercised these peremptory challenges in a discriminatory manner—arguing that these jurors seemed like good candidates, there was no indication of impartiality, and there was a "definite pattern" of striking jurors due to race (J. 165, 313-15)—the court asked the prosecutor to provide race-neutral reasons for each strike (J. 163-68, 312-15). *See Batson*, 476 U.S. at 97. The prosecutor explained that she struck potential jurors Carter, McGee, and Palmore because of their type of employment, or lack thereof (J. 168-69, 316), which has been recognized as a valid, race-neutral reason for striking a juror, *see Moore v. Walker*, 234 F.3d 1262, at *2 (2d Cir. Nov. 16, 2000) (collecting cases) ("Negative experience with law enforcement, age, life experience, type of employment, demeanor, and inattentiveness have all been found to be acceptable race-neutral bases for peremptory challenges.").

15

Specifically, the prosecutor challenged Carter because of her lack of employment and discussion of her interest in her personal hobbies, including her statement that "she was not comfortable working in a group setting." (J. 168.) The prosecutor challenged McGee because she worked at a rehabilitation center as a drug and alcohol counselor. (J. 169.) The prosecutor explained that this reasoning was not unique to McGee, and that the same reasoning had been the basis for challenging another potential juror who was a guidance counselor. (J. 169.) Finally, the prosecutor challenged Palmore because she was a teacher and school administrator for thirty-seven years. (J. 315.) The prosecutor explained that striking a teacher was similar to striking a counselor, as people who hold these jobs are often "overly confident in their ability to lead a group and to . . . judge someone's credibility." (J. 316.) The trial court accepted this explanation, noting that the prosecutor used this reasoning to challenge a high school principal, a guidance counselor, and two drug counselors (J. 317), and that "the reasons proffered by the People [were] not [pretextual]" (J. 170). The court, thus, found that defendant "ha[d] not made a sufficient showing to meet the burden of proof," and permitted the peremptory challenges of Carter, McGee, and Palmore to stand. (J. 170, 317.)

The Appellate Division found that "the record demonstrates that the prosecution's race-neutral explanations as to all three *Batson* challenges were not pretextual." *Terrell*, 149 A.D.3d at 1108 (citation omitted). On habeas review, this Court can only find a constitutional error where the record "compel[s] the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications." *Watson*, 427 F. App'x at 61. Based on its review of the record, the Court concludes that these three explanations were racially neutral, *see Mullins v. Bennett*, 228 F. App'x. 55, 56 (2d Cir. 2007) (noting "the general recognition of employment as a race-neutral reason for exclusion"); *see also Black v. Rock*, 103 F. Supp. 3d 305, 316 (E.D.N.Y. 2015) (finding that prosecutor's reasoning for excluding two jurors—including "lack of employment"—was "not facially discriminatory"), and, in light of the record (including the prosecutor's treatment of similarly-situated white jurors) there is no basis to disturb the trial court's decision to credit the prosecutor's race-neutral explanation, *see Jordan v. Lefevre*, 293 F.3d 587, 594 (2d Cir. 2002) ("The relative plausibility or implausibility of each explanation for a particular challenge, assessed in light of the prosecution's acceptance of jurors with similar circumstances, may strengthen or weaken the assessment of the prosecution's explanation as to other challenges and thereby assist the fact-finder in determining overall intent." (quoting *United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir. 1991))).

In sum, petitioner has not demonstrated that the "state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence . . . and that the corresponding factual determination was 'objectively unreasonable' in light of the record." *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2005). Thus, the Court finds that the Appellate Division's denial of petitioner's *Batson* claim was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence. Accordingly, petitioner's *Batson* claims do not warrant relief.

IV. CONCLUSION

For the reasons set forth above, this Court finds that petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254.

Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall close this case.

SO ORDERED.

Joseph F. Bianco
United States Circuit Judge
(sitting by designation)

Date:   August 16, 2019
        Central Islip, NY

\*\*\*

Petitioner proceeds *pro se*. Respondent is represented by Grazia R. DiVincenzo, Assistant District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11901.